**Marvelin BASS, Plaintiff,**

**v.**

**HARBOR LIGHT MARINA, INC., et al., Defendants.**

**Civ. A. No. 73-1301.**

United States District Court,
D. South Carolina,
Greenville Division.

March 14, 1974.

Adam Fisher, Jr., of Fisher & Black, Greenville, S. C., for plaintiff.

Wilburn C. Gable, Jr., of Watkins, Vandiver, Kirven, Long & Gable, Anderson, S. C., for Harbor Light Marina, Inc.

Duke K. McCall, Jr., of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for Chrysler Corp.

Larry D. Estridge, of Wyche, Burgess, Freeman & Parham, Greenville, S. C., for Thunderbird Corp.

## ORDER

HEMPHILL, District Judge.

ON DEFENDANT HARBOR LIGHT MARINA, INC.'S MOTIONS TO QUASH SERVICE UNDER RULE 12, FEDERAL RULES OF CIVIL PROCEDURE, TO DISMISS UNDER RULE 12, AND FOR SUMMARY JUDGMENT UNDER RULE 56, FEDERAL RULES OF CIVIL PROCEDURE.

Before discussing the various issues begat by the motions presented, the court finds it appropriate to set forth the background of this action in some detail, as gleaned from the several affidavits submitted. Plaintiff has filed affidavits of Marvelin Bass, plaintiff; Lillian Bass, plaintiff's wife; and Edwin Farmer, a former employee of defendant movant. Defendant's affidavits are those of Howard W. Doster, Sr., vice-president of defendant movant; Gene C. White, president of Watermark Corp.; and Ernest Vandiver, stockholder in Tugaloo Development Corp.

## STATEMENT OF FACTS

Tugaloo Development Corp. was incorporated in Georgia in 1963 and had its principal place of business in Franklin County, Georgia. Ernest Vandiver, Hugh W. Whitworth, and W. W. Marrett were the sole stockholders in the Tugaloo Development Corp. On May 9, 1963, Tugaloo Development Corp. purchased from Hugh W. Whitworth a tract of land containing 214.6 acres, more or less, and being in the 1117th District of Hart County, Georgia. Tugaloo Development Corp. sub-divided the tract of land into

a subdivision known as Harbor Light Club Estates and constructed a marina, admittedly in the State of Georgia, on a portion of the land fronting Lake Hartwell.

Lake Hartwell is a man-made reservoir about 50 miles southwest of Greenville, South Carolina, on the Savannah River. The state line between Georgia and South Carolina is located in the middle of the lake and the river. Interstate Highway I–85 skirts the edge of the lake and crosses its lower portion. The marina was constructed on the Georgia side of Lake Hartwell and was operated by Tugaloo Development Corporation under the name and style of Harbor Light Marina. Howard W. Doster, Sr., was first employed in 1968 by Tugaloo Development Corp. to manage and operate the business known as Harbor Light Marina but he did not own any part of or any interest in the business.

On June 2, 1970, plaintiff signed an installment sale contract for the purchase of a 34' 1970 Drift-R-Cruz Houseboat. Howard W. Doster, Sr., signed on behalf of Harbor Light Marina, designated as the seller in the copy of the contract before the court. (There are no facts presented to the court as to how plaintiff's interest in the boat was first aroused.) Plaintiff contends in his deposition that he has had trouble with the boat from the day he bought it.

Gene C. White and Edward S. Bivens are the sole stockholders of Watermark Corp., a Georgia corporation. (There are no other facts presented as to the business nature of this corporation, its time and place of incorporation, or its principal place of business.)

In May 1972, all of the issued and outstanding shares of the common stock of Tugaloo Development Corp. were sold to Watermark Corp. By the terms of the sales agreement, the stockholders of Tugaloo Development Corp. agreed to indemnify Watermark Corp. against any and all liabilities arising at any time in the future based upon acts or transactions or failures to act before the clos-

ing, which were not reflected or reserved against in the financial statements as of March 31, 1972. The assets of Tugaloo Development Corp. consisted of real and personal property and the business known as Harbor Light Marina which continued to be so operated by Watermark Corp. after such sale.

During the time that Harbor Light Marina was owned and operated by Watermark Corp., Harold W. Doster, Sr., continued as manager for Harbor Light Marina but he did not own any part of or any interest in Watermark Corp.

The Harbor Light Marina exhibited boats and accessories at boat shows held in Greenville, South Carolina, during February, 1972, and February, 1973.

On May 14, 1973, an agreement to purchase the lands, buildings, and assets constituting the business known as Harbor Light Marina was entered into between Watermark Corp., Holiday Land Co., Inc., and Howard W. Doster, Sr.

On June 1, 1973, Harbor Light Marina, Inc., was organized and incorporated under the laws of the state of Georgia, pursuant to an order of John W. Williford, Judge of the Superior Court for the Northern Circuit for the State of Georgia. The sole stockholders of Harbor Light Marina, Inc. are Howard W. Doster, Sr., Doris Doster, Holiday Land Co., Inc., and Bern E. Sims. The agreement to purchase the Harbor Light Marina from Watermark Corp. was assigned by Howard W. Doster, Sr., and Holiday Land Co., Inc., to Harbor Light Marina, Inc. On June 8, 1973, Harbor Light Marina, Inc., purchased the real and personal property as provided in the agreement of sale from Watermark Corp. The sale by Watermark Corp. did not cover all of its assets. Watermark Corp. is still in existence.

According to the affidavit of Howard W. Doster, Sr., plaintiff removed his houseboat from the Harbor Light Marina complex sometime in May or June, 1973. (It is not clear from the affidavit as to the exact date of or reasons for the removal.)

Harbor Light Marina, Inc., owns no real or personal property in South Carolina, is not incorporated in South Carolina, and does not have a registered office or agent for the service of process in South Carolina.

Service of process was effected on Harbor Light Marina, Inc., on October 15, 1973, pursuant to the South Carolina long-arm statute, § 12–23.14 [1], Code of Laws of South Carolina (1962), as a foreign corporation not authorized to do business in the state. The complaint is based on alleged negligence and breach of warranty.[2]

According to the affidavit of Edwin Farmer, a former employee of Harbor Light Marina, Inc., during the period of his employment from June through December, 1973, various employees took boats from the marina into the lake for testing purposes and often crossed over into the South Carolina side of the lake. Employees of Harbor Light Marina, Inc., frequently made trips to Portman Shoals Marina, on the South Carolina side of the lake, to perform services on boats docked at that marina. These trips were allegedly made in the scope of employment on behalf of and during business hours of Harbor Light Marina, Inc.

Plaintiff has presented documented evidence that Harbor Light Marina, Inc., has a listing in the current telephone directories for the cities of Greenville and Simpsonville, South Carolina. Plaintiff has also presented documented evidence that Harbor Light Marina, Inc., has advertised in the Independent Daily Mail, a newspaper published out of Anderson, South Carolina, with circulation in the Greenville area, every Sunday from July 1, 1973 through October 28, 1973. He has further presented the October and November, 1973, editions of "Outdoors", a magazine on boating recreation, which contains the marking "Compliments of: Harbor Light Marina." Plaintiff contends that these magazines were mailed to him and presumably other customers as a regular practice of Harbor Light Marina, Inc.

### THE PRESENT MOTIONS

Defendant, Harbor Light Marina, Inc., moves for the following:

(1) motion to quash under Fed.R.Civ.P. 12(b)(5) [3] for insufficiency of service of process upon

(a) Howard W. Doster, Sr., and

(b) Harbor Light Marina, Inc.;

(2) motion to dismiss under Fed.R.Civ. P. 12(b)(2) [4] for lack of jurisdiction over the person of Harbor Light Marina,

---

1. See 12–23.14(a), S.C.Code Anno. provides: Service of process on foreign corporation not authorized to do business in State.— (a) Every foreign corporation which is not authorized to do business in this State shall, by doing in this State, either itself or through an agent, any business, including any business for which authority need not be obtained as provided by § 12–23.1, be deemed to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising out of or in connection with the doing of any business in this State.

2. A cause of action for strict liability in tort was dismissed by this court in its order of December 17, 1973.

3. Fed.R.Civ.P. 12(b)(5) provides: Defenses and Objections—When and How Presented —By Pleading or Motion—Motion for Judgment on The Pleadings.

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * * (5) insufficiency of service of process . . . .

4. Fed.R.Civ.P. 12(b)(2) provides: Defenses and Objections—When and How Presented —By Pleading or Motion—Motion for Judgment on the Pleadings.

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (2) lack of jurisdiction over the person, * * *.

Inc.; and (3) motion for summary judgment under Fed.R.Civ.P. 56(b).[5]

## MOTION TO QUASH UNDER RULE 12(b)(5)

■ As to Howard W. Doster, Sr., this motion shows an apparent misunderstanding on the part of movant's counsel as to the service of process. There was no such service effected and Doster is not before this court *as an individual*. Of course, he does have an interest in this lawsuit as a stockholder of defendant movant. Perhaps the confusion arises from a statement on the United States Marshal's service instruction and process record for the complaint served upon Harbor Light Marina, Inc. Special instructions state: "Advise Secretary of State to forward to Mr. Howard Doster . . . ." In any event, this court does not, at this time, have jurisdiction over Doster as an individual and, therefore, the motion to quash is denied as untimely.

■ As to Harbor Light Marina, Inc., the service of process was sufficient. Service was effected through the Secretary of State of South Carolina, pursuant to § 12–23.14, Code of Laws of South Carolina (1962). Receipt of service was signed by "Harbor Light Marina, L. M. Dickerson", identified as the present manager of defendant movant. The return filed with the court is proper and in correct form. There is further documentation from the Secretary of State's office to support the conclusion that service of process was properly made. The legal citations supporting service in this matter are numerous. Therefore, the motion to quash service of process upon Harbor Light Marina, Inc., is denied because the service was sufficient.

## MOTION TO DISMISS UNDER RULE 12(b)(2)

Harbor Light Marina, Inc., moves to be dismissed from this action as a defendant pursuant to Rule 12(b)(2) for lack of jurisdiction over the person because it is alleged that it is not, and was not, at the time of the service of process, doing business within South Carolina.

The concept of "doing business" in South Carolina is defined by § 10.2–803 (1), Code of Laws of South Carolina (1972):

§ 10.2–803. Personal jurisdiction based upon conduct. (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in the State;

. . . . . .

(g) entry into a contract to be performed in whole or in part by either party in this State; or

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

Thus, it appears to this court that the South Carolina legislature has evidenced an intent to expand the jurisdictional reach of its courts to the full extent of the Due Process Clause of the United States Constitution.

Although the concept of jurisdiction has expanded greatly as a result of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the United States Supreme Court emphasized in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that the power of state courts to exercise personal jurisdiction over nonresident defendants is

5. Fed.R.Civ.P. 56(b) provides: Summary Judgment.

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

limited to the extent that certain "minimal contacts" [6] within the forum state remain a prerequisite to the exercise of that power.

The Supreme Court of South Carolina has established what are those certain "minimal contacts" for this forum state in Triplett v. R. M. Wade & Co., S.C., 200 S.E.2d 375 (1973). The court sustained jurisdiction over a nonresident defendant corporation, its holding being based upon the following essential contacts: defendant had sent an agent into the state for the purpose of investigating the claim in controversy; defendant's activities and sales agreements contemplated making sales in the state; and sales literature and products of the defendant were stocked by a firm within the state.

■ The question presented here is whether the activities of defendant movant have constituted "doing business" within South Carolina, as defined by § 10.2–803(1) [7], and whether the defendant movant has established certain "minimal contacts" with South Carolina, as interpreted by the state supreme court in *Triplett,* supra.

The evidence of the defendant movant's activities alleged to constitute "doing business" and "minimal contacts" with South Carolina should be recapitulated: (1) defendant movant's predecessor exhibited its boats and accessories at boat shows held in this state (there is no evidence that movant has done so); (2) movant's employees took boats from the marina into the lake for testing purposes and often crossed over into this state's side of the lake; (3) movant's employees frequently made trips to a marina on the South Carolina side of the lake to perform services on boats docked there; (4) movant maintains listings in telephone directories for two different areas in this state; (5) movant regularly advertised its business in a newspaper in this state; (6) movant periodically sent magazines for good will purposes to its former South Carolina customers; and (7) movant sells boats at its place of business to purchasers who use them on both the Georgia and South Carolina sides of Lake Hartwell and the Savannah River.

Plaintiff insists that each and all of the seven activities constitute transacting business in this state in accordance with § 10.2–803(1)(a). The third activity listed allegedly constitutes contracting to supply services in this state, albeit to third parties, in accordance with § 10.2–803(1)(b).[8] The second activity allegedly constitutes entry into a contract, albeit for service to third parties, to be performed in whole or in part by defendant movant in this state, in accordance with § 10.2–803(1)(g).[9] The seventh activity allegedly constitutes distribution of goods with the reasonable expectation that those goods are to be used in this state and are so used, in accordance with § 10.2–803(1)(h).[10]

---

6. "As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1

L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him." [357 U.S. 250, 251, 78 S.Ct. 1238.]

7. See page 790, supra.

8. Id.

9. Id.

10. Id.

It is clear to this court that the sum total of movant's activities in this state constitute "doing business" in South Carolina and that defendant movant has established sufficient "minimal contacts". Movant's advertisements and solicitation of business from South Carolina residents and its various other activities on the South Carolina side of the border line through the lake satisfy the test for jurisdiction to attach. Traditional notions of fair play and substantial justice would be offended if a foreign corporation is allowed to entice residents of this state across the border to enter into contracts governed by foreign law and thereafter avoid liability for any breaches arising therefrom when presented to a forum in this state.

The court's conclusion is bolstered by other decisions from this state. In Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508 (1960), South Carolina residents brought an action for injuries allegedly sustained when a dredge was negligently operated by the defendant foreign corporation so as to overturn plaintiffs' boat, on which they were traveling downstream on the Savannah River. The decision rested on the determination that defendant's operations, although not continuously performed in South Carolina, constituted the transaction of business within the meaning of the statute. The court there pointed out that defendant's operations extended over a continuous period of more than ten months and over an area of 142 miles of the river whose middle, like the lake herein, is the boundary between Georgia and South Carolina. Those operations were conducted, of necessity, sometimes in Georgia and sometimes in South Carolina, and were such as were normally incident to defendant's business.

 On the other hand, one isolated transaction is insufficient to constitute "doing business" under the statute. Jurisdiction does not attach over a foreign corporation upon a single sale in South Carolina. Clawson v. Garland, 37 F.R.D. 324 (E.D.S.C.1965). The fact, alone, that products manufactured by a defendant foreign corporation and bearing its tradename pass through the channels of trade into South Carolina and are resold by independent merchants, is not sufficient to constitute transacting business within the meaning of the statute. Phillips v. Knapp-Monarch Co., 245 S.C. 383, 140 S.Ed.2d 786 (1965). Likewise, a foreign corporation is not subject to jurisdiction in South Carolina in an action for injuries allegedly caused by a defect in a product used in South Carolina but purchased in a foreign state. The defendant had a sole salesman, living in a foreign state, who made only two trips annually into South Carolina. McGee v. Holan Div. of Ohio Brass Co., 337 F.Supp. 72 (D.S.C.1972).

 This case is essentially a contract action and the five cited cases interpreting the state "doing business" statute are tort cases but this court recognizes that each determination must be based on the facts of the individual case. This court concludes that the factual situation presented here is closer to *Triplett* and *Boney* where jurisdiction attached than it is to the *Clawson, Phillips,* and *McGee* fact patterns where jurisdiction was found to be lacking because of insufficient minimal contacts and negligible transaction of business.

Therefore, defendant's motion to dismiss under Rule 12(b) (2) for lack of jurisdiction over the person of Harbor Light Marina, Inc., is denied because it had sufficient "minimal contacts" with this state and was "doing business" within the meaning of the state statute, as interpreted by the state supreme court.

### MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

Defendant, Harbor Light Marina, Inc., moves for summary judgment under Rule 56 on the grounds that plaintiff is suing the "wrong" party. Defendant contends liability, if any, arising from this cause of action would be imposed upon Tugaloo Development Corp. and/or Watermark Corp.

■ It is too early in this case to rule on the merits solely on the basis of affidavits. There remain genuine issues of fact as to the existence, as well as the imposition, if there is to be any, of liability. Therefore, the motion for summary judgment under Rule 56 is denied.

■ In any event, such a motion is improper. Rule 21, Misjoinder and Non-joinder of Parties, states:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such as are just.

It is clear that not all the parties needed for a just adjudication are presently before the court but it seems that they should be made parties. This court, in its discretion, declines to join the two foreign corporations *sua sponte*, despite the fact that such procedure is permissible for this court to do so under Rule 21. The court prefers to allow the parties to pursue their respective plans of advocacy.

In order to avoid conflict with the Fourth Circuit's recent remand to this court in Burris v. State Department of Public Welfare of South Carolina, 491 F.2d 762 (4th Cir. 1974), as it reads that opinion, this court is compelled to suggest to the lawyers in a lawsuit how to proceed, especially where sloppy pleading is evidenced by one or both sides. In that opinion, the Fourth Circuit said per curiam:

> In an amended complaint filed in the District Court plaintiff alleged that he was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution in that the defendant, State Department of Public Welfare of South Carolina, did not afford him an adequate hearing before denying his application for Aid to the Totally and Permanently Disabled. The District Court Judge granted the defendant's motion to dismiss the complaint on the ground that the court did not have jurisdiction because the complaint failed to state a substantial federal question or the requisite jurisdictional amount.

> \* \* \* \* \* \*

> Without expressing or implying an opinion whatsoever as to the merits of plaintiff's complaint, the court is of the opinion that the *District Court Judge should have apprised plaintiff's counsel* of the availability of 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and assuming that the complaint is amended to come within these statutes, the District Court should accept jurisdiction and consider the merits of the case. Accordingly, the order dismissing plaintiff's complaint is vacated, and this case is remanded to the District Court for further proceedings consistent with this opinion. 491 F.2d at 763.[11]

This court has already handed down two rulings on procedural matters in the short span of five months since this lawsuit was instituted. In the interest of conserving future judicial time, this court, in accordance with the Fourth Circuit's ruling, must recommend a future course of action to both sides.

As to plaintiff, the court suggests that it move under Rule 19(a) to join the individuals who were stockholders of the now non-existent Tugaloo Development Corp. and to join the Watermark Corp. Plaintiff should take care to fulfill the requirements of Rule 19(c). In the alternative, if plaintiff believes that it cannot obtain proper venue over any or all of the aforementioned parties, an issue upon which this court does not express its opinion, it should consider presenting to this court, a motion for change of venue, under 28 U.S.C. § 1404(a), from this district to the North-

---

11. Ordinarily, this court would refrain from giving advice, and ·reluctantly incorporates the statements here made, but the court of review has ·said this should be done. The question of the ethics of such procedure was not treated in the opinion.

ern District of Georgia, or whatever other district in which all prospective defendants may be found and properly served with process and in which the action might have been brought against the defendants presently before the court.

As to defendant movant, the court suggests that it move under Rule 14(a) to bring in the individuals who were stockholders of the now non-existent Tugaloo Development Corp. and the extant Watermark Corp. as third-party defendants. In the alternative, defendant movant may make a motion for change of venue under 28 U.S.C. § 1404(a), similar to the one recommended to plaintiff. Nevertheless, if defendant movant prefers to delay plaintiff in the trial of this cause of action, the court suggests that it move under Rule 12(b)(7) for dismissal of the action for failure to join under Rule 19 an indispensable party needed for just adjudication.

The court, at this time, expresses no opinion on the merits of its suggestions.

## CONCLUSIONS

(1)(a) Motion to quash under Rule 12 (b)(5) for insufficiency of service of process upon Howard W. Doster, Sr., is Denied as untimely.

(1)(b) Motion to quash under Rule 12 (b)(5) for insufficiency of service of process upon Harbor Light Marina, Inc., is Denied because service of process was sufficient.

(2) Motion to dismiss under Rule 12(b) (2) for lack of jurisdiction over the person of Harbor Light Marina, Inc., is Denied because defendant movant had sufficient "minimal contacts" with South Carolina and was "doing business" within the meaning of § 10.2–803(1), Code of Laws of South Carolina (1972), as interpreted by the state supreme court.

Motion for summary judgment under Rule 56 is Denied because genuine issues of fact remain and because the motion is improper.

And it is so ordered.