Leslie CANTY, Jr.

v.

CITY OF RICHMOND, VIRGINIA, POLICE DEPARTMENT, et al.

Civ. A. No. 74–0106–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 30, 1974.

Leslie Canty, Jr., pro se.

Wm. L. Wimbish, W. Barrett Disney, Jr., Asst. City Attys., Thomas D. Stokes, III, Michael W. Smith, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, pro se, brings this civil rights action alleging that the city defendants, City of Richmond Police Department; and Officers C. E. Brown, E. W. Patterson, and Cole; and the Greyhound defendants, Greyhound Bus Lines and driver L. L. Macon, have denied him due process of law by subjecting him to false arrest, false imprisonment, and the arbitrary imposition of excessive force, and have also infringed his right to travel interstate. Jurisdiction is conferred by 28 U.S.C. § 1343(3). This matter comes before the Court on motions to dismiss made by the City of Richmond Police Department and Officers Brown, Patterson and Cole, and a motion for dismissal or, alternatively, for summary judgment made by defendants Greyhound and Macon.

## I. Statement of Facts

The facts alleged in the complaint, which for the purpose of this motion must be accepted as true, follow: In early December 1972, plaintiff Canty was travelling by Greyhound Bus from New York City to Tuscaloosa, Alabama. On a stopover in Richmond, plaintiff left the bus momentarily and upon return was refused, without reason, permission to reboard the bus by defendant Macon. Plaintiff nonetheless reboarded the bus, whereupon the manager of the terminal, at the prompting of defendant Macon, called the police to have him removed. According to the plaintiff, when the police arrived they found him sitting peaceably in the bus and, without any justification, ordered him to leave. The plaintiff then asked the police to furnish him with the reason why he should leave, and when they refused so to provide one he again refused to leave. The police then forcibly removed the plaintiff from the bus, choking his neck and "macing" him in the face in the process. As a result of the incident, plaintiff was arrested without probable cause, taken to the hospital to have his eyes treated, and by a Richmond jury but not before to the police station to be booked on charges of disorderly conduct and resisting arrest. After spending an indeterminate time in the city jail, plaintiff was released pending trial. The plain-

tiff was subsequently found not guilty being held in contempt by the circuit court when he was prevented by a snow storm from attending his trial. Plaintiff now seeks expungement of his arrest records and monetary relief.

## II. Jurisdiction

A complaint brought under the civil rights statutes, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), in order to survive a motion to dismiss, must allege (1) an infringement of a right secured by the Fourteenth Amendment; (2) done under color of state law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). Plaintiff's inartfully drafted complaint, however, does not with any precision or coherence track the two-pronged requirement of Monroe v. Pape. Nevertheless, the Court believes that a liberal construction of these *pro se* pleadings will enable the plaintiff to survive the motion to dismiss as to all except the Police Department. The Court, therefore, feels compelled to articulate the reasons why it concludes a liberal construction of the pleadings is mandated in this action.

In a motion by defendants to dismiss, all the material allegations of the complaint must be accepted as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). A complaint may not be dismissed "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969) (Craven, J.), citing Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80 (1957).[1] Moreover, civil rights complaints are to be construed broadly in order to effectuate the high congressional priority placed upon the vindication of civil rights' deprivations.

Green v. Dumke, 480 F.2d 624, 628 (9th Cir. 1973) (Hufstedler, J.).

Furthermore, the Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs. Johnson v. Mueller, *supra*, 415 F.2d at 355. It appears that district courts in our circuit are governed by the obverse of the rule of Conley v. Gibson, *supra*. A civil rights complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. See Burris v. State Department of Public Welfare of South Carolina, 491 F.2d 762 (4th Cir. 1974) (per curiam).

For example, in *Burris*, the plaintiff who was represented by counsel alleged that he was denied due process of law when the State Department of Public Welfare denied his application for "Aid to the Totally and Permanently Disabled" without a hearing. The plaintiff did not allege a claim under 42 U.S.C. § 1983 and jurisdiction pursuant to 28 U.S.C. § 1343(3), so the district court apparently treated the complaint as alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331(a) and dismissed because the complaint did not state a substantial federal question or allege the requisite jurisdictional amount of $10,000. The Court of Appeals vacated the district court's dismissal order and remanded the case to the district court to accept jurisdiction and consider the merits because it was of the opinion that the district judge should have apprised plaintiff's counsel of the availability of 42 U.S.C. § 1983 and 28 U.S.C. § 1343. *Accord,* Johnson v. Mueller, *supra,* 415 F.2d at 355.

This solicitude for a civil rights plaintiff with counsel must be heightened when a civil rights plaintiff

---

[1]. In a recent case, the Court of Appeals adverted to a "reasonable doubt" standard rather than a "certainty" standard to govern the district judge's consideration of a motion to dismiss. See Dotson v. Ramada Inn, No. 73–2524, slip opinion at 6 (4th Cir., July 1, 1974). For all practical purposes, however, the two modes of expression evoke the same concept. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

appears *pro se*. In the great run of *pro se* cases, the issues are faintly articulated and often only dimly perceived. There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. So, although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the *pro se* plaintiff, radiations from *Burris* strongly suggest that the district court must examine the *pro se* complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations. Accordingly, the Court in considering the defendants' motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed. See Aiken v. United States, 282 F.2d 215, 216 (4th Cir. 1960). *Cf.* Conley v. Gibson, *supra*, 355 U.S. at 48, 78 S.Ct. 99.

### A. Constitutional Deprivations

 The Court construes the plaintiff's complaint as alleging that the city defendants acting in concert with the Greyhound defendants deprived him of due process of law and infringed his right to travel. As to the due process claim, the first prong of the Monroe v. Pape test is satisfied because the due process clause of the Fourteenth Amendment shields the individual from false arrest, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); false imprisonment, Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969); and the arbitrary imposition of excessive force, Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970). See also, Johnson v. Mueller, *supra*, 415 F.2d at 355.

 Plaintiff's claim that the defendants have infringed his constitutionally protected right to travel interstate also satisfies the first element of the Monroe v. Pape test. The constitutionally protected right to travel " . . . occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." United States v. Guest, 383 U.S. 745, 757, 86 S. Ct. 1170, 1178, 16 L.Ed.2d 239 (1966) (Stewart, J.). This right to travel like other constitutional rights is shielded by the Fourteenth Amendment and may be appropriately protected by congressionally enacted civil rights legislation. See Griffin v. Breckenridge, 403 U.S. 88, 106, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

### B. State Action

Plaintiff, for purposes of this motion to dismiss, has satisfied the first element of the *Monroe* test as against all defendants. The only question remaining is whether the Court has jurisdiction over the several defendants that the plaintiff has brought before the Court.

### 1. The Police Department

 A city or municipality is not a "person" under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) for purposes of either monetary, Monroe v. Pape, 365 U.S. 167, 191–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), or injunctive relief, City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Furthermore, it is the rule in this circuit that a suit against a municipal agency is in effect a suit against a municipality itself so that a police department would likewise not be a "person" under § 1983 for purposes of monetary and injunctive relief. *Cf.* Singleton v. Vance Co. Board of Education, 501 F.2d 429 (4th Cir. 1974). Accordingly, the complaint against the Police Department must stand dismissed.[2]

---

2. This Court could take jurisdiction over the Police Department under the federal question statute, 28 U.S.C. § 1331(a), assuming that the plaintiff could allege the requisite jurisdictional amount, and hear the § 1331(a) action against the Police Depart-

## 2. The Police Officers

 The police officers—Brown, Cole and Patterson—stand on a different footing. Although City of Kenosha v. Bruno, *supra*, precludes municipal liability for money damages in § 1983 actions, municipal officers and employees may be held liable for money damages in § 1983 suits. Monroe v. Pape, 365 U.S. 167, 187, 192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Furthermore, this Court may properly take jurisdiction over state or municipal defendants in their official capacities when a civil rights plaintiff, as in the case here, seeks injunctive relief. Harper v. Kloster, 486 F.2d 1134, 1138 (4th Cir. 1973) (Winter, J.). As it may later appear that these officers will not be able to provide plaintiff with the kind of injunctive relief he seeks—expungement of his police records—leave will freely be given plaintiff to amend his complaint to add as party defendants such appropriate members of the police department as can grant the relief he seeks.

## 3. The Greyhound Defendants

Finally, plaintiff alleges that defendants L. L. Macon and Greyhound have participated with the state officials in action which by securing his false arrest, false imprisonment, and arbitrary imposition of punishment, has deprived him of due process of law and also infringed his right to travel interstate.

The Court has already concluded that the plaintiff has sufficiently alleged a violation of rights protected by the Fourteenth Amendment to satisfy the first element of the *Monroe* test; the sole question remaining is whether the plaintiff has alleged sufficient participation in "state action" to bring these defendants within the "color of state law" rubric of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and can thus survive a motion to dismiss predicated upon the assertion that the defendants are not persons for purposes of § 1983.

 Private parties may be brought within the ambit of § 1983 when they act in concert with, conspire with, or participate with state officials in action which infringes rights protected by the Fourteenth Amendment. See Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974). As the Court said in United States v. Price,[3] 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966),

> "[t]o act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

 In construing the complaint with liberality, the Court finds that the plaintiff has alleged sufficient private involvement and sufficient private concerted action with the police officers in the alleged malicious arrest, false imprisonment, arbitrary punishment, and

ment along with the § 1983 suit against the police officers and the Greyhound defendants under the theory of "pendant party" jurisdiction. See Bishop v. Wood, 498 F.2d 1341, (4th Cir. 1974) (Winter, J., dissenting). Likewise, since the plaintiff appears to be a citizen of New York and the defendant Police Department may be a "citizen" of Virginia for purposes of the diversity jurisdiction, the Court might be able to take jurisdiction over the Police Department under 28 U.S.C. § 1332 and again, assuming that the plaintiff could allege the requisite jurisdictional amount, hear the action against the Police Department at the same time that it hears the action against the police officers under the doctrine of "pendant party" jurisdiction. See Moor v. County of Alameda, 411 U.S. 693, 710–722, 93 S.Ct. 1785, 36 L.

Ed.2d 596 (1973). As it appears, however, that the plaintiff can obtain appropriate relief in his § 1983 suit against the police officers, the Court does not believe at this time that justice necessitates construing the complaint as alleging jurisdiction under either 28 U.S.C. § 1331(a) or § 1332.

3. *Price*, of course, involved the construction of 18 U.S.C. § 242, the criminal counterpart of 42 U.S.C. § 1983, but as the Court there stated, ". . . 'under color' of law means the same thing in § 242 that it does in the civil counterpart of § 242, 42 U.S.C. § 1983 (1964 ed.). Monroe v. Pape, 365 U.S. 167, 185, 81 S.Ct. 473, 483, 5 L.Ed.2d 492 (majority opinion), 212 (Frankfurter, J., dissenting)." 383 U.S. at 794, n. 7, 86 S.Ct. at 1157.

infringement of the right to travel to hold the Greyhound defendants liable should he be able to prove the facts alleged. No matter how unlikely it is that the plaintiff will be able to prove the facts alleged, "he is entitled to make that attempt, unless it appears beyond a reasonable doubt that he can prove no set facts warranting the relief he seeks." Dotson v. Ramada Inn, Inc., No. 73–2524, slip opinion at 6 (4th Cir. 1974).

In *Dotson, supra,* defendant Ramada Inn swore out a warrant against the plaintiff's son, Dotson Junior, charging him with malicious destruction of property. The warrant did not specify whether the person to be arrested was Dotson Junior or Dotson Senior. When Dotson Senior, upon having been informed that there was a warrant out for his arrest, went to the police station to inquire, the defendant sheriff had him committed to the custody of the defendant jailer for seven hours, and despite Dotson Senior's explanatory protests, refused to release him, refused his request to use the telephone, and denied him permission to be taken before the magistrate, who was located within 50 feet of the sheriff's headquarters, to post bail.

The district judge dismissed the claim against Ramada at a pre-trial conference without advertence to the relevant moving papers because he "saw" neither the conspiracy nor the concert of action between Ramada and the police which would suffice to impute the actions of the latter to the former. Even though *Dotson* was dismissed at a pre-trial conference and not ostensibly upon formal consideration by the district judge of Ramada's motion to dismiss, the Court of Appeals reviewed the district judge's dismissal order in light of the standard [4] for review of a lower court order granting a 12(b) motion to dismiss.

Hence, plaintiff Canty's complaint for purposes of this Court's disposition of the Greyhound defendants' motion to dismiss stands in the same procedural posture as Dotson's complaint against Ramada, and the Court of Appeals decision in Dotson must necessarily guide this Court in its consideration of the motion to dismiss made by Macon and Greyhound.

Dotson, like Canty, had alleged a conspiracy or concerted action between the police and the private defendants. Ramada, like Greyhound here, did not file affidavits which would have tended to rebut Dotson's allegations of conspiracy or concerted action and would have thus given it the benefit of Rule 56(e) by shifting the burden to the plaintiff to flesh out by affidavit his allegations. Consequently, the burden was upon Ramada to prove beyond a reasonable doubt that Dotson's complaint was insufficient as a matter of law, and the Court of Appeals was not convinced that Ramada had discharged its obligation at that stage of the pleadings.

Since the Greyhound defendants have not filed affidavits by either Macon or the terminal manager that might tend to rebut Canty's allegations of conspiracy and concerted action, they are not entitled to the benefit of Rule 56(e), which shifts the burden of going forward back to the plaintiff. Therefore on this motion to dismiss the burden remains upon the defendants to demonstrate beyond a reasonable doubt that plaintiff can prove no set of facts to substantiate his claim of conspiracy or concerted action. As the Court is not convinced beyond a reasonable doubt at this stage of the litigation that plaintiff Canty cannot prove that Macon or Greyhound conspired or acted in concert with the police to violate his constitutional rights, the defendants' motion shall be denied.

An appropriate order shall enter.

4. See Part II, infra.